# UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ALEJANDRO GONZALEZ,<br><br>    Plaintiff,<br><br>    v.<br><br>SCHNEIDER ELECTRIC USA, INC., d/b/a PELCO BY SCHNEIDER ELECTRIC, a corporation, and DOES 1 through 20, inclusive,<br><br>    Defendants.<br>_____/ | Case No.  1:14-cv-01324-SKO<br><br>**ORDER DENYING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**<br><br>(Doc. 28) |

## I.   INTRODUCTION

On September 8, 2015, Defendant Schneider Electric USA, Inc.[1] ("Defendant") filed a motion for summary judgment or, in the alternative, partial summary judgment, on the claims set forth in Plaintiff Alejandro Gonzalez's ("Plaintiff") complaint.[2]  (Docs. 28; 29).)  On September 30, 2015, Plaintiff filed his opposition, and on October 7, 2015, Defendant filed a reply brief. (Docs. 30; 31.)  Having reviewed the parties' papers and all supporting material,[3] the matter was

---

[1]   For purposes of its motion only, Defendant Schneider Electric USA, Inc., used the terms Pelco and Schneider interchangeably.  Defendant Schneider Electric USA, Inc., states that it "is a global organization" and therefore, the use of the term Pelco within the context of the instant motion and order "signifies the manufacturing plant located in Clovis, California, currently operated by Defendant's subsidiary Pelco, Inc." (Doc. 28, p. 6.)

[2]   Plaintiff brings claims for (1) discharge and/or discrimination for jury service in violation of Cal. Labor Code, § 230(a) and (2) wrongful termination in violation of public policy.  (*See* Doc. 1 ("Complaint").)

[3]   This Court carefully reviewed and considered the record, including all evidence, arguments, points and authorities, declarations, testimony, statements of undisputed facts and responses thereto, objections and other papers

found suitable for decision without oral argument pursuant to Local Rule 230(g), and the October 14, 2015, hearing was vacated.

For the reasons set forth below, Defendant's motion for summary judgment or, in the alternative, partial summary judgment, is DENIED.

## II.  BACKGROUND[4]

**A.  Reduction in Force**

Pelco hired Plaintiff in January of 2002 for an at-will assembly position. (Doc. 28-1 (Defendant's Statement of Undisputed Facts ("DUMF")), ¶ 1).) In 2006, Pelco promoted Plaintiff first to Assistant Team Leader and then to Team Leader. (DUMF, ¶ 2.) In 2011, Plaintiff applied for a Production Supervisor position. On or about July 2, 2011, Pelco instead promoted Navong Moua to the Production Supervisor position. (DUMF, ¶ 3.) In February of 2012, Plaintiff again applied for an at-will Production Supervisor position. This time, he was promoted. (DUMF, ¶ 4.) Moua and Plaintiff were the only two Production Supervisors reporting directly to Hagihara in 2012. (DUMF, ¶ 5.) As a Production Supervisor, Plaintiff's team was responsible for the original manufacturing of new cameras and related equipment, including hard drives, lenses, power cords, and DVRs. (DUMF, ¶ 6.) As part of his supervisory role, Plaintiff "engaged in projects designed to promote further efficiencies, including, but not limited to, reducing headcount through employee layoffs." (DUMF, ¶¶ 8-9.)

In October of 2012, Emma Westmoreland assumed the Plant Manager position at Pelco, and began the process of identifying production personnel for a reduction in force scheduled for

---

filed by the parties. Omission of reference to evidence, an argument, document, objection or paper is not to be construed that this Court did not consider the evidence, argument, document, objection or paper. This Court thoroughly reviewed, considered, and applied the evidence it deemed admissible, material and appropriate for summary judgment. This Court does not rule on objections in a summary judgment context, unless otherwise noted.

[4]  Citation to undisputed facts will reference the corresponding number in Defendant's Separate Statement of Undisputed Material Facts ("DUMF"); Defendant's statement, Plaintiff's responses, and Defendant's replies are found at Docket Nos. 28-1, 30-1, and 31. The disputed facts will be noted as such.

Further, the parties each made objections, which the Court has carefully reviewed. To the extent the Court necessarily relied on evidence that has been objected to, the evidence was admissible and, therefore, the objection is overruled. It is not the practice of the Court to rule on evidentiary matters individually in the context of summary judgment, unless otherwise noted. This is particularly true when the evidentiary objections consist of general objections such as "irrelevant" or "vague." *See Capital Records, LLC v. BlueBeat, Inc.*, 765 F. Supp. 2d 1198, 1200 n.1 (C.D. Cal. 2010).

early 2013. (DUMF, ¶ 12.) Defendant asserts that Westmoreland explicitly instructed Hagihara that he must eliminate one of his two Production Supervisors, either Moua or Plaintiff.[5] (DUMF, ¶ 12.) Moua and Plaintiff had "substantially similar" responsibilities as Production Supervisors, and differed only in seniority. (DUMF, ¶¶ 15; 17.) Therefore, "Hagihara used the objective criteria of seniority as a manager"[6] to determine which Production Supervisor to recommend for layoff, and Westmoreland approved his decision.[7] (DUMF, ¶ 16-19.)

Hagihara then sought assistance from Pelco's human resources department to locate "an alternative position in Pelco's repair department (albeit a demotion), as an alternative to layoff." (DUMF, ¶ 20.) On December 21, 2012, Hagihara and two human resources representatives "notified Plaintiff of his position elimination, effective January 4, 2013[,]" and offered Plaintiff "the option of accepting a demotion in lieu of termination." (DUMF, ¶ 21; *see also* Pl. Depo. at 20:9-11; 23:23-25:9; 27:12028:4; 176:13-177:14; 179:10-181:7.) Plaintiff did not accept the alternative position in the repair division, and he was terminated on January 4, 2013. (DUMF, ¶ 22; *see also* Pl. Depo at 25:13-16; 27:9-28:13.)

---

[5] Westmoreland's role as the new Plant Manager was to serve as "change management, implementing sweeping cost-saving measures to Pelco's manufacturing." (Doc. 29, p. 148 (Declaration of Emma Westmoreland), ¶ 2.) Within her first three months of work at Pelco, Westmoreland "oversaw two large-scale reductions in force." (Westmoreland Decl., ¶ 3.) As part of these lay-offs, Westmoreland states that she "advised [her] direct reports that layoffs in the original camera manufacturing divisions were needed" and she advised Hagihara that "the company could no longer support [ ] two Production Supervisors reporting to him and thus he must identify one for layoff." (Westmoreland Decl., ¶ 4; Declaration of Jonathan Hagihara, ¶ 5.)

Westmoreland also determined that the two Electrical Assembly divisions "would be consolidated in order to further promote efficiencies and reduce unnecessary redundancies" and therefore Hagihara's supervisory position was eliminated and he assumed a different position as Continuous Improvement Manager with Pelco. (Westmoreland Decl., ¶ 5; Hagihara Decl., ¶ 1.)

[6] Because Hagihara was unable to reach any meaningful distinction between Moua and Plaintiff in performance, he "identified [Plaintiff] for the reduction in force because he held the Production Supervisor position for a shorter duration than Moua." (Hagihara Decl., ¶ 6.)

[7] Plaintiff disputes that Hagihara relied on the "objective criteria" of seniority to determine which Production Supervisor to recommend for layoff or that he recommended Plaintiff's layoff to Westmoreland for her approval (Doc. 30-1 (Plaintiff's Response and Supporting Evidence to DUMF ("PUMF")), ¶¶ 16-19), and objects to Hagihara's declaration as evidence based on unidentified "inconsistencies" between Hagihara's deposition testimony, his declaration, and Defendant's Response to First Set of Interrogatories, Interrogatory No. 10 (identifying "Jon Hagihara" as a fact witness to the decision to terminate Plaintiff). (Docs. 30; 30-1.) It is unclear, however, how Hagihara's deposition testimony that he identified Plaintiff's position for reduction in force and Defendant's assertion that Hagihara was the decisionmaker in identifying Plaintiff's position for layoff is "inconsistent" with Defendant's interrogatory response that Hagihara is a fact witness to the decision to terminate Plaintiff and thereby inadmissible. Therefore, to the extent that Plaintiff is objecting to the admissibility of Hagihara's declaration as evidence, the objection is overruled.

Plaintiff disputes Defendant's statement that Pelco's camera sales revenue "plummeted" while its "relative costs of manufacture rose" in the years prior to Plaintiff's January 2013 layoff. (*See* PUMF, ¶ 7.) Plaintiff agrees that layoffs occurred and "[a]s of October 17, 2012, Pelco had already, and was continuing to undergo, significant organization," but disputes that "over 300" individuals were laid off in 2011 and 2012, 183 in 2011 and 124 in 2012, for lack of documentary evidence. (*See* PUMF, ¶¶ 8; 27.) Defendant asserts that nineteen employees were terminated in the January 4, 2013, reduction in force, and five of those employees elected to accept a demotion in lieu of termination. (DUMF, ¶ 23[8].)

**B.     Jury Duty**

Plaintiff reported for jury duty on October 15, 2012, and was empaneled on a jury through November 26, 2012. (DUMF, ¶ 25.) Plaintiff informed Hagihara and Joan Stafford in human resources that he would be reporting for jury duty. (Pl. Depo. at 132:7-22.) After Plaintiff was recalled for a second day of jury selection and it became clear that Plaintiff would not be dismissed from jury duty, on October 17, 2012, Hagihara wrote a letter "explaining why it would be detrimental for Pelco for Plaintiff to be absent for six weeks during the last quarter of 2012. Plaintiff provided this letter to the judge, who disregarded the request for Plaintiff to be released from jury duty." (DUMF, ¶ 26; *see also* Pl. Depo. at 132:1-22; 142:22-143:16; Doc. 28-2, p. 96; Doc. 30-3, p. 99 (Hagihara letter to Fresno Superior Court dated October 17, 2012).) Plaintiff was empaneled on a jury, and after informing Hagihara on October 19, 2012, that he had been empaneled (Pl. Depo. at 134:10-23; Declaration of Chantelle Egan, Exh. A, p. 98), Plaintiff was provided with the "Schneider Jury Duty" policy.[9] (DUMF, ¶ 32; Doc. 29, Egan Decl., Exh. A, pp. 98-99, 100-102; Declaration of Amber Lang, Exh. D.)

---

[8]     Plaintiff disputes that these other layoffs and demotions occurred for lack of documentary evidence. (PUMF, ¶ 23.) However, Defendant has provided sworn declarations in support of these statements, and such declarations are permissible forms of evidence for a motion for summary judgment pursuant to Fed. R. Civ. P. 56(c)(1)(A). Therefore, Defendant's statements regarding numbers of layoffs occurring directly before and at the time of Plaintiff's termination are admissible as evidence.

[9]     The Schneider Jury Duty policy provides that any employee summoned for jury duty will continue to be paid, and

> . . . In the event of an extended absence during jury or witness duty, once completed, the employee will return to a position that he/she would have attained if continuously employed (if qualified), or in the last position held by the employee, or in a position of like seniority, status and pay.

4

It is undisputed that "Pelco adhered to its Jury Duty policy with Plaintiff, providing him full wages during the days he served as a juror and returning him to his Production Supervisor position upon his return." (DUMF, ¶ 33; *see also* Pl. Depo. at 154:21-155:22.) Plaintiff did not lodge any complaint with Pelco's human resources department regarding either his jury service or his return to work from jury duty. (DUMF, ¶ 34; *see also* Pl. Depo. at 189:14-190:6.)

Defendant maintains that "Plaintiff's jury service played no role in the decision to eliminate Plaintiff's position" and "Plaintiff has only his own speculation as to why he was laid off." (DUMF, ¶¶ 35-36.) Plaintiff disputes these contentions. (PUMF, ¶¶ 35-36.)

**C.    Procedural Backrgound**

    **1.    Worker's Compensation Claim**

Following Plaintiff's termination, he filed a Workers' Compensation claim in January of 2013, alleging emotional injury arising from his efforts to keep up with his job duties while fulfilling his jury service obligation. (Pl. Depo. at 203:3-204:25; PUMF, ¶¶ 39-40.) Plaintiff alleges he continued to work "as much as possible" while serving as a juror, including going "to working early in the morning before jury duty, and often return[ing] to work after jury duty[,]" as well as "keep[ing] up with his work emails and other activities."[10] (Compl., ¶ 18; *see also* Pl. Depo. at 203:3-204:25.)

    **2.    Plaintiff's Complaint**

Plaintiff filed his Complaint in this Court on August 22, 2014, alleging claims for (1) discharge and/or discrimination for jury service, in violation of Cal. Labor Code § 230(a) and (2) wrongful termination in violation of public policy. (Compl.) Plaintiff alleges he was summoned for jury duty, provided notice of his summons to jury duty to his employer, appeared for jury duty as required by law, and was empaneled on a jury. (Compl., ¶¶ 27-30.) Plaintiff alleges that less than one month after he returned from jury duty, he was discharged "for taking time off as required by law to complete his jury service" in violation of state law and public policy. (Compl., ¶ 31.) Defendant filed its answer on October 27, 2014, and its amended answer

---

[10]    Defendant denies that Plaintiff performed work while he was empaneled as a juror. (*See* Am. Answer, ¶ 18.)

on May 15, 2015, denying that Plaintiff was discharged as a result of his jury service. (Docs. 10; 23.)

### 3. Motion for Summary Judgment

On September 8, 2015, Defendant filed its motion for summary judgment or, in the alternative, partial summary judgment, along with its statement of undisputed facts and appendix of evidence in support of its motion. (Docs. 28; 29.) On September 30, 2015, Plaintiff filed his opposition and response to Defendant's statement of undisputed facts, as well as a declaration and exhibits in support of his opposition. (Doc. 30.) On October 7, 2015, Defendant filed its reply (Doc. 31) and on October 8, 2015, submitted to chambers a complete copy of the transcript and exhibits of the May 1, 2013, deposition of Jonathan Hagihara.

### III. LEGAL STANDARD FOR SUMMARY JUDGMENT

Summary judgment is appropriate when the pleadings, disclosure materials, discovery, and any affidavits provided establish that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A material fact is one that may affect the outcome of the case under the applicable law. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute is genuine "if the evidence is such that a reasonable jury could return a verdict in favor of the nonmoving party." *Id.* (internal quotation marks and citation omitted).

The party seeking summary judgment "always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986) (internal quotation marks omitted). The exact nature of this responsibility, however, varies depending on whether the issue on which summary judgment is sought is one in which the movant or the nonmoving party carries the ultimate burden of proof. *See Soremekun v. Thrifty Payless, Inc.*, 509 F.3d 978, 984 (9th Cir. 2007); *Cecala v. Newman*, 532 F. Supp. 2d 1118, 1132 (D. Ariz. 2007).

//

If the movant will have the burden of proof at trial, it must demonstrate, with affirmative evidence, that "no reasonable trier of fact could find other than for the moving party." *Soremekun*, 509 F.3d at 984. In contrast, if the nonmoving party will have the burden of proof at trial, "the movant can prevail merely by pointing out that there is an absence of evidence to support the nonmoving party's case." *Id.* (citing *Celotex*, 477 U.S. at 323); *see also James River Ins. Co. v. Schenk, P.C.*, 519 F.3d 917, 925 (9th Cir. 2008); *Nissan Fire & Marine Is. Co. v. Fritz Cos.*, 210 F.3d 1099, 1105-06 (9th Cir. 2000).

If the movant satisfies its initial burden, the nonmoving party must go beyond the allegations in its pleadings to "show a genuine issue of material fact by presenting affirmative evidence from which a jury could find in [its] favor." *FTC v. Stefanchik*, 559 F.3d 924, 929 (9th Cir. 2009). In resolving a summary judgment motion, "the court does not make credibility determinations or weigh conflicting evidence." *Soremekun*, 509 F.3d at 984. That remains the province of the jury or fact finder. *See Anderson*, 477 U.S. at 255. Instead, "[t]he evidence of the [nonmoving party] is to be believed, and all justifiable inferences are to be drawn in [its] favor." *Id.* Inferences are not, however, drawn out of the air, and it is the opposing party's obligation to produce a factual predicate from which the inference may be drawn. *See Juell v. Forest Pharms., Inc.*, 456 F.Supp.2d 1141, 1149 (E.D. Cal. 2006); *UMG Recordings, Inc. v. Sinnott*, 300 F. Supp. 2d 993, 997 (E.D. Cal. 2004).

"A genuine issue of material fact does not spring into being simply because a litigant claims that one exists or promises to produce admissible evidence at trial." *Del Carmen Guadalupe v. Agosto*, 299 F.3d 15, 23 (1st Cir.2002); *see Galen v. County of Los Angeles*, 477 F.3d 652, 658 (9th Cir. 2007); *Bryant v. Adventist Health System/West*, 289 F.3d 1162, 1167 (9th Cir. 2002). "[B]ald assertions or a mere scintilla of evidence" will not suffice. *Stefanchik*, 559 F.3d at 929; *see also Matsushita Electric Industrial Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986) ("When the moving party has carried its burden under Rule 56(c), its opponent must do more than simply show that there is some metaphysical doubt as to the material facts.").

A "motion for summary judgment may not be defeated . . . by evidence that is 'merely colorable' or 'is not significantly probative.'" *Anderson*, 477 U.S. at 249-50; *Hardage v. CBS*

7

*Broad. Inc.*, 427 F.3d 1177, 1183 (9th Cir. 2006). The Court has the discretion in appropriate circumstances to consider materials that are not properly brought to its attention, but is not required to examine the entire file for evidence establishing a genuine issue of material fact where the evidence is not set forth in the opposing papers with adequate references. S*ee Southern Cal. Gas Co. v. City of Santa Ana*, 336 F.3d 885, 889 (9th Cir. 2003); *Carmen v. San Francisco Unified Sch. Dist.*, 237 F.3d 1026, 1031 (9th Cir. 2001). If the nonmoving party fails to produce evidence sufficient to create a genuine issue of material fact, the moving party is entitled to summary judgment. *See Nissan Fire*, 210 F.3d at 1103; *Matsushita*, 475 U.S. at 587 (citation omitted).

## IV.   DISCUSSION

### A.   A Genuine Issue of Material Fact Exists as to Whether Plaintiff's Employment Was Terminated in Retaliation for Jury Service

Plaintiff alleges he was unlawfully discharged and discriminated against as a result of taking approximately six weeks off work for jury service. In California, discrimination and retaliation claims are subject to the burden-shifting framework set forth in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973), to determine whether there are triable issues of fact for resolution by a jury. *Loggins v. Kaiser Permanente Intern.*, 151 Cal. App. 4th 1102, 1108-09 (2007); *Yartzoff v. Thomas*, 809 F.2d 1371, 1375 (9th Cir. 1987).

Under *McDonnell Douglas*, a Plaintiff must establish a prima facie case that "(1) he or she engaged in a 'protected activity,' (2) the employer subjected the employee to an adverse employment action, and (3) a causal link existed between the protected activity and the employer's action." *Loggins*, 151 Cal. App. 4th at 1109 (citing *Yanowitz v. L'Oreal USA, Inc.*, 36 Cal. 4th 1028 (2005)). To establish causation, a plaintiff must show that "engaging in the protected activity was one of the reasons for his firing and that but for such activity he would not have been fired." *Villiarimo v. Aloha Island Air, Inc.*, 281 F.3d 1054, 1064 (9th Cir. 2002). Only after a prima facie case is made does the burden shift to the employer to provide evidence that there was a legitimate, nonretaliatory reason for the adverse employment action. *Loggins*, 151 Cal. App. 4th at 1109 (citing *Morgan v. Regents of Univ. of Cal.*, 88 Cal. App. 4th 52, 68 (2000)); *see Guz v. Bechtel Nat'l, Inc.*, 24 Cal. 4th 317, 358 (2000).

If the employer produces evidence showing a legitimate reason for the adverse employment action, "the presumption of retaliation drops out of the picture," and the burden shifts back to the employee to provide "substantial responsive evidence" that the employer's proffered reasons were untrue or pretextual. *Id.* (quoting *Yanowitz*, 36 Cal. 4th at 1042 and *Martin v. Lockheed Missiles & Space Co.*, 29 Cal.App.4th 1718, 1735 (1994)) (internal quotations omitted); *Guz*, 24 Cal. 4th at 361 (requiring plaintiff to provide specific and substantial evidence that "intentional discrimination, on grounds prohibited by the statute, was the true cause of the employer's actions")).

### 1. Prima Facie Showing of Discrimination

Plaintiff alleges he was discharged and discriminated against for performing his lawfully required jury service in violation of Cal. Labor Code § 230(a).[11] Under Section 230(a), the elements of a claim of wrongful discharge[12] for performing jury duty are (1) the employer discharged, or otherwise discriminated against, the employee; (2) the adverse employment action described in (1) was substantially motivated by the employee's taking or having taken time off to serve on an inquest or trial jury, as required by law; and (3) the employee, prior to taking the time off, provided the employer reasonable notice that he or she was required to serve. *See Deschene v. Pinole Point Steel Co.*, 76 Cal. App. 4th 33, 41-42 (1999) (setting forth the similar elements of a claim under Sections 230(b)-(c)).

Plaintiff also alleges that he was wrongfully terminated in violation of the public policy expressed in Section 230(a). To prevail on this claim, a plaintiff must prove that Section 230(a) was violated – that is, the plaintiff's discharge must have been *substantially motivated* by his taking of time off for jury service and he must have provided his employer with reasonable notice of the same prior to taking the time off. Nothing else is required to prove this claim; discharge

---

[11] Cal. Labor Code § 230(a) provides:

> An employer may not discharge or in any manner discriminate against an employee for taking time off to serve as required by law on an inquest jury or trial jury, if the employee, prior to taking the time off, gives reasonable notice to the employer that he or she is required to serve.

[12] The Court notes that Plaintiff was also offered the option of accepting a demotion in lieu of termination. (DUMF, ¶ 21.) Demotions are a form of retaliation, and therefore the offering of a demotion in lieu of termination does not negate or disprove any element of Section 230(a).

9

due to an employee's participation in jury duty is, as a matter of law, a wrongful discharge in violation of public policy. *Gantt v. Sentry Insurance*, 1 Cal. 4th 1083 (1992), *overruled on other grounds by Green v. Ralee Engineering Co.*, 19 Cal. 4th 66 (1998); *see also Xin Liu v. Amway Corp.*, 347 F.3d 1125, 1137-38 (9th Cir. 2003). A legitimate reason for the termination alleged by a defendant may operate as a defense to such a claim, but if the plaintiff shows that such a legitimate reason is either not supported by the evidence or is pretext for discrimination then that is an issue for the jury to determine. It is not the judge's role on summary judgment to weigh conflicting evidence or to make credibility determinations. *Soremekun*, 509 F.3d at 984.

        **a.**     **A Triable Issue of Material Fact Exists as to Whether Plaintiff's Termination was Substantially Motivated by Plaintiff's Jury Service**

It is uncontested that Plaintiff served as a juror for approximately six weeks, from October 15, 2012, through November 26, 2012. (PUMF, ¶ 25.) It is also uncontested that on December 21, 2012, twenty-five calendar days after returning to work, Plaintiff was notified of the termination of his employment effective January 4, 2013. (DUMF, ¶¶ 21; 22.) The fact that Plaintiff provided reasonable notice to Defendant before taking time off for jury duty, and that he had been summoned to jury service is also not in dispute. (*See* DUMF; PUMF.) It is disputed, however, whether the elimination of Plaintiff's position was *substantially motivated* by Plaintiff's six week absence for jury service after he was empaneled on a jury. (*See* DUMF, ¶¶ 12-14, 16, 18, 35-37 (explaining Plaintiff was identified for lay off as part of a company-wide reduction in force based solely upon his seniority at his position); PUMF ¶ 12-14; 16; 18; 35-37 (disputing that Plaintiff was laid off based on seniority and contending that Plaintiff was, instead, terminated as retaliation for taking six weeks off for jury service).)

A causal link between participation in a protected activity and unlawful termination may be established by inference, when the adverse employment action occurs within a relatively short time after the protected activity. *Fisher v. San Pedro Hosp.*, 214 Cal. App. 590, 615 (quoting *Jordan v. Clark*, 847 F.2d 1368, 1376).); *see also Passantino v. Johnson & Johnson Consumer Prods., Inc.*, 212 F.3d 493, 507 (9th Cir. 2000) (noting that causation can be inferred from timing alone); *Miller v. Fairchild Indus.*, 885 F.2d 498, 505 (9th Cir. 1989) (prima facie case of causation

was established when discharges occurred forty-two and fifty-nine days after EEOC hearings); *Yartzoff*, 809 F.2d at 1376 (sufficient evidence existed where adverse actions occurred less than three months after complaint filed, two weeks after charge first investigated, and less than two months after investigation ended).

Here, Hagihara wrote a letter to the superior court on October 17, 2012, "requesting a release from Jury Duty for [Plaintiff] as it would be detrimental to our business if [Plaintiff] were to be absent for the next 6 weeks." (Doc. 29, Exh. A, p. 97.) Despite it being "impossible" for Pelco to operate without Plaintiff (*see* Doc. 29, Exh. A, p. 97), within nineteen business days of returning to work after the end of his six-week absence for jury service, Plaintiff was notified of his impending termination. Though Defendant contends that "an exact timeline is immaterial" (Doc. 31, p. 11), this temporal proximity between Plaintiff's protected activity and his termination raises a triable issue of material fact as to whether Plaintiff's jury service was a substantial motivation for his termination.

Defendant has provided the Court with evidence that it was engaged in an ongoing reduction of force related to declining economic conditions and corporate reorganization prior terminating Plaintiff's employment (Docs. 28, p. 15; Lang Decl., ¶¶ 2, 7, Exhs. B (Pelco human resources memorandum evidencing the "need to reduce # of [manager positions] due to fewer employees"); C (identifying nineteen individuals subject to the January 2013 layoff); 31-2) and Plaintiff does not dispute that Defendant was facing economic stress or that reductions in workforce were already taking place while he was still a Production Supervisor (*see, e.g.,* Pl. Depo. at 21:6-7, 21:17-19, 65:6-19, 68:1-5, 186:7-16, 188:11-189:1). Despite this evidence, in light of the fact that Hagihara expressly described Plaintiff's temporary absence from Pelco as "detrimental" to Pelco's business, the Court is unable to conclude that "but-for" Plaintiff's six weeks of jury service, he would not have been terminated.

Although "[m]ere sequence is not enough" to establish Plaintiff was terminated due to his jury service, *Holtzclaw v. Certainteed Corp.*, 795 F. Supp. 2d 996, 1020 (E.D. Cal. 2011), (plaintiff's termination thirty-nine working days after returning from medical leave was "insufficient" on its own to establish the causation element; plaintiff could not establish that "'but

11

for' having taken medical leave he would not have been fired"), Plaintiff testified under oath that statements made and conduct by his supervisor Hagihara in the time leading up to and immediately following his jury service made it clear that the catalyst of Plaintiff's termination was his six-week absence for jury duty (*see* Pl. Depo. at 173:7-174:11, 183:22-185:22). Plaintiff's position as a supervisor went from absolutely necessary – so much so that Hagihara described his six-week absence as being "detrimental" to Pelco's business – to being superfluous and redundant within three weeks of returning to work. It is unclear when Plaintiff was identified for termination, but the Court is able to infer that the decision was made sometime after Westmoreland came to Pelco as Plant Manager "[i]n October 2012" and December 21, 2012, when Plaintiff was notified of the impending layoff. (*See* Hagihara Decl.; Westmoreland Decl.; Doc. 29, Exh. A, pp. 106-16.) Defendant argues that Plaintiff's termination was based solely upon seniority, and had absolutely nothing to do with his absence for jury service. But this contention does not change the fact that it is disputed whether Plaintiff's six-week absence for jury duty was the substantial motivation for his identification for termination immediately following his absence for jury service.

### 2. Whether Defendant's Preferred Legitimate, Nondiscriminatory Reason for Plaintiff's Termination Was a Pretext for Discrimination

Defendant contends that Plaintiff was terminated as part of an ongoing reduction of force related to declining economic conditions and corporate reorganization prior to terminating Plaintiff's employment. (Docs. 28, p. 15; Lang Decl., ¶¶ 2, 7, Exhs. B (Pelco human resources memorandum evidencing the "need to reduce # of [manager positions] due to fewer employees"); C (identifying nineteen individuals subject to the January 2013 layoff); 31-2). Assuming Plaintiff has established a prima facie case of retaliation for jury service, Defendant contends that this reduction in force "easily meets the standard" of a "legitimate, non-discriminatory reason" for Plaintiff's termination. (Doc. 28, pp. 14-15.) Defendant also argues that the decision to lay off Plaintiff rather than his peer Production Supervisor Moua, was based on the objective criteria of seniority in the supervisory role. (Doc. 28, p. 15; *see also* Deposition of Jonathan Hagihara, May 1, 2013, at 44:8-10 (stating that his decision to "eliminate" Plaintiff's employment was based

1  "primarily" on seniority).)

### a. A Triable Issue of Material Fact Exists as to Whether Defendant Engaged in Intentional Discrimination When Deciding Which Individual Workers to Release

Though it is well-settled that holding layoffs in response to declining economic conditions and corporate reorganization can constitute a legitimate, nondiscriminatory reason for terminating an employee, "[a]n employer's freedom to consolidate or reduce its work force, and to eliminate positions in the process, does not mean it may 'use the occasion as a convenient opportunity to get rid of its [older] workers.'" *Guz*, 24 Cal. 4th at 358. "Invocation of a right to downsize does not resolve whether the employer had a discriminatory motive for cutting back its work force, or engaged in intentional discrimination when deciding which individual workers to retain and release." *Id.* A reasonable juror, examining the evidence and testimony, could infer that Plaintiff was individually selected for the layoff as a direct and immediate consequence of his six-week absence for jury service.

Defendant contends that Plaintiff's allegation that the reduction-in-force defense is mere pretext for its discriminatory motivation in terminating his employment "is not sufficient to raise a triable issue as to pretext[.]" (Doc. 31, p. 11.) Defendant argues that "temporal proximity alone is inconsequential to the summary judgment analysis." (Doc. 31, p. 11 (citing *Arteaga v. Brink's, Inc.*, 163 Cal. App. 4th 327, 353 (2008).) However, when taken "together with other evidence" such as Plaintiff's ten years of work history with Pelco, positive work reviews, dearth of disciplinary actions, and recent promotion to Production Supervisor, and Hagihara's October 17, 2012, letter to the superior court describing Plaintiff's temporary absence as "detrimental" to Pelco's business, the temporal proximity of Plaintiff's six-week absence for jury duty and the elimination of his position and termination three weeks after returning from jury duty are sufficient to raise a material question of fact as to whether Defendant's reason for the layoff is pretext. *See Arteaga*, 163 Cal. App. 4th at 354 (noting that "temporal proximity, together with the other evidence, may be sufficient to establish pretext") (emphases omitted).

Defendant also asserts that Plaintiff's testimony that "Hagihara, the decision[-]maker, harbored ill-will" towards him for his jury service is not enough to raise a triable issue of material

13

fact. (Doc. 31, p. 13.) While "mere allegation and speculation do not create a factual dispute for purposes of summary judgment[,]" *Nelson v. Pima Cmty. College*, 83 F.3d 1075, 1081-82 (9th Cir. 1996) (citing *Witherow v. Paff*, 52 F.3d 264, 266 (9th Cir. 1995)), Plaintiff's testimony regarding his extensive and "cold" interactions with his supervisor Hagihara – if fully credited and taken together with the above – buttress Plaintiff's contention that his six-week absence for jury duty was the catalyst for his termination. (*See* Pl. Depo. at 173:7-174:11, 183:22-185:22). In resolving a summary judgment motion, "the court does not make credibility determinations or weigh conflicting evidence." *Soremekun*, 509 F.3d at 984. That remains the province of the jury or fact finder. *See Anderson*, 477 U.S. at 255.

Under these disputed facts, it is possible that a reasonable jury – charged with crediting Plaintiff and Hagihara's respective testimony – could conclude that Plaintiff's absence for jury duty was a substantial motivating factor underlying Hagihara's identification of Plaintiff's Production Supervisor position for elimination and the approval of Plaintiff's termination. On the other hand, under these facts, a reasonable jury could conclude that Plaintiff's absence for jury duty service was not a substantial motivating factor underlying Plaintiff's termination, and that Plaintiff was terminated for a legitimate, nondiscriminatory reason. Therefore, summary judgment as to these claims must be denied due to the existence of genuine issues of material fact.

In sum, summary judgment as to the first claim for discharge for performing jury duty and the second claim for wrongful termination in violation of public policy is hereby DENIED.

**B.  Plaintiff's Noneconomic Damages May Not Be Preempted by Workers' Compensation if Defendant Is Found to Have Terminated Plaintiff's Employment in Violation of Public Policy**

Defendant seeks partial summary judgment on the issue of Plaintiff's emotional distress damages. (Doc. 28, pp. 13-14.) Defendant contends that Plaintiff is preempted from seeking damages for his alleged emotional distress arising from termination of his employment in this Court, and that Plaintiff's sole means of redress is to appeal to the Workers' Compensation Board. (Doc. 28, p. 14.) Plaintiff disagrees. (Doc. 30, pp. 11-12.)

Under California law, "the statutory language, 'arising from and in the course of the employment,' [ ] manifestly encompasses more than the period during which the contractual

14

employment relationship technically exists." *Shoemaker v. Myers*, 52 Cal. 3d 1, 19 (1990). Because "postdischarge injuries may come within the scope of workers' compensation, [ ] a fortiori injuries resulting from the discharge itself will also ordinarily be covered by workers' compensation." *Id.* Even if the employer's conduct is egregious, outrageous, or manifestly unfair, the exclusive remedy provisions of workers' compensation will apply if that conduct is within "a normal part of the employment relationship. *See id.* at 16.

The exclusive remedy provisions, however, "are not applicable under certain circumstances, sometimes variously identified as 'conduct where the employer or insurer stepped out of their proper roles', or 'conduct of an employer having a "questionable" relationship to the employment', but which may be essentially defined as not stemming from a risk reasonably encompassed within the compensation bargain." *Id.* at 16-17 (internal citations omitted). "When an employer's decision to discharge an employee results from an animus that violates the fundamental policy of this state . . . such misconduct cannot under any reasonable viewpoint be considered a 'normal part of the employment relationship.'" *Gantt*, 1 Cal. 4th at 1100; *see also Shoemaker*, 52 cal. 3d at 20 ("Where the injury is a result of conduct, whether in the form of discharge or otherwise, not seen as reasonably coming within the compensation bargain, a separate civil action may lie").[13]

//

---

[13]   Defendant cites to *Accord Rolda v. Pitney Bowes, Inc.*, 66 Cal. Comp. Cases 241 (Cal. W.C.A.B. 2001), for the position that "a former employee can seek relief from the Workers' Compensation Board for stress resulting from an unlawful termination." (Doc. 31, p. 10.)  *Accord Rolda*, however, only clarified that a "multilevel analysis" is necessary to determine the compensability of psychiatric industrial injuries where the employer asserted a "good faith personnel action" defense pursuant to Cal. Labor Code § 3208.3(h).

Relying on *McKinnon v. Otis Elevator Co.*, 149 Cal. App. 4th 1125 (2007), Defendant contends that Plaintiff's demand for "emotional distress damages mirror Plaintiff's workers' compensation stress claim arising in part from his termination. Such double recovery is prohibited. *See McKinnon* [ ] ('The statutory scheme of section 3850 *et seq.* is designed to prevent double recovery by an employee or an employer')." (*See* Docs. 28, p. 14; 31, p. 10).

*McKinnon*, however, dealt with third-party liability for industrial injuries, not with the recovery of noneconomic damages from the employer itself for emotional distress as a result of the employer's retaliation for engaging in a protected activity:  "The statutory scheme of section 3850 et seq. is designed to prevent double recovery by an employee or an employer, and to preclude double liability being imposed on a third-party tortfeasor.  This statutory scheme is designed to hold the third party liable, as far as possible in one total action, 'for all the wrong his tortfeasance brought about' regardless of whether it is the employee or the employer who brings suit." *McKinnon*, 149 Cal. App. 4th at 1130 (internal citations and quotations omitted).

The Court has denied summary judgment as to whether Plaintiff's termination was substantially motivated by his jury service, as that is a material question of fact that must be decided by a jury. If the jury finds Plaintiff's jury service *was not* a substantial motivation in Plaintiff's termination and Plaintiff was instead terminated for a reason "within the scope of workers' compensation," these damages would be preempted by the Workers' Compensation Act. The inverse is also true. Accordingly, Defendant's motion for partial summary on the issue of whether emotional distress damages are preempted is DENIED.

## V.   CONCLUSION AND ORDER

For the reasons set forth above, IT IS HEREBY ORDERED that

1. Defendant's motion for summary judgment is DENIED, and
2. Defendant's alternative motion for summary adjudication is DENIED.

IT IS SO ORDERED.

Dated:   **October 14, 2015**                             **/s/ Sheila K. Oberto**
                                                    UNITED STATES MAGISTRATE JUDGE